UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRISTOPHER STOKES,** | Civ. No. 2:11-3133 (KM) |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **GREG BARTKOWSKI, *et al.*,** | |
| **Respondents.** | |

APPEARANCES:

**CHRISTOPHER A. STOKES**, Petitioner pro se
528037/277181C
New Jersey State Prison
P.O. BOX 861
Trenton, N.J. 08625

**STEPHANIE PAIGE DAVIS-ELSON**, Counsel for Respondents
Hudson County Prosecutor's Office
595 Newark Avenue
Jersey City, N.J. 07306

**MCNULTY**, District Judge

Petitioner Christopher Stokes ("Petitioner"), a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Greg Bartkowski and the Attorney General of New Jersey. Petitioner has also moved to amend his Petition to include two additional grounds for habeas relief. For the reasons stated below, the Petition and the motion are denied.

## I. BACKGROUND

### A. **Petition for Habeas Corpus**

This Court, affording the state court's factual determinations the appropriate deference, <u>see</u> 28 U.S.C. § 2254(e)(1),[1] will simply reproduce the recitation of facts as set forth by Superior Court of New Jersey, Appellate Division, on direct appeal:

> Fred Plaza and Charlie Arrazo, were employed by Astro Enterprises as speaker salesmen. They worked together, traveling around in a van, selling sets of speakers to the general public. On May 29, 2002, Plaza was driving the van, Arrazo was sitting in the front passenger seat, and the back of the van contained eight sets of speakers. They drove the van into Jersey City, and while stopped at a red light on Route 440, they offered to sell a pair of speakers to two black men in a silver Daewoo. The van and Daewoo pulled into the parking lot of a shopping center in order for the occupants to continue negotiations.
>
> The victims described the driver of the Daewoo, later identified as Henry Steed, as skinny, and the passenger, later identified as co-defendant William Gilliam, as heavier. In the shopping center parking lot, Plaza negotiated with Gilliam for about a half an hour, resulting in an agreed-upon sale price of $750 for a set of speakers. As Gilliam claimed he had only $500 on him, Plaza and Arrazo agreed to follow the two men to Gilliam's sister's house for him to retrieve the additional money.
>
> Plaza drove the van closely behind the Daewoo through Jersey City. As a precaution, Plaza memorized the license plate number on the Daewoo. The Daewoo came to a stop on Broadman Parkway, a two-way residential street. Plaza parked the van behind the Daewoo.

---

[1]Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *See Williams v. Beard,* 637 F.3d 195, 204 (3d Cir. 2011) (citing *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996) (deference to factual determinations of state courts, both trial and appellate)).

Gilliam, who had been sitting in the passenger seat, got out of the Daewoo and began talking on a cell phone. Plaza then witnessed a black man with dreadlocks approach Gilliam and appear to ask for directions. After the man walked away, Gilliam approached the passenger side of the van.

At this point, a blue Mitsubishi Eclipse pulled up and double-parked along-side the van. Plaza then felt a gun pointed at the back of his head. The man holding the gun to Plaza's head was the man with the dreadlocks, later identified as defendant, who had approached Gilliam outside the Daewoo moments before. He told Plaza that he was a "cop" and not to move or he would blow his head off. Gilliam then put his hands on Arrazo's neck and ordered him out of the van. When all four men were on the curb next to the van, Gilliam took a cell phone and approximately $100 in cash from Arrazo.

As this was taking place, Patrolman (Ptl.) King and Ptl. Tedesco of the Jersey City Police Department were traveling in a marked police cruiser on Broadman Parkway. They observed the Eclipse double-parked and stopped to issue a ticket. Defendant saw the police approach. Gilliam told Arrazo to be "cool" and to act like they were "hanging out." Then defendant threw the gun he had been holding into the van and got into the Eclipse. Gilliam got into the van and drove off. The Eclipse followed. Ptl. King then activated his overhead lights and pulled the Eclipse over as it turned the corner onto Westview Court.

As the officers approached the vehicle, Plaza and Arrazo ran up to the officers, shouting that one of the men had a gun and had robbed them. Ptl. King drew his service weapon and ordered the driver out of the car. Plaza and Arrazo identified defendant as the armed individual and defendant was arrested at the scene. Cash in the amount of $175 was found in defendant's front pants' pocket. When the police checked the vehicle for a weapon, five vials of cocaine and $640 in cash were recovered from the center console. The Eclipse was registered to defendant.

At the police station, both Plaza and Arrazo again identified defendant in the holding cell. Plaza provided the officers with the license plate number of the Daewoo. The Daewoo was registered to Beatrice McClory and was located by the police in close proximity to McClory's home. The victims were then taken to the Daewoo, where they identified the vehicle as the one they had followed onto Broadman Parkway.

3

McClory's husband, Steed, was originally considered a suspect, but no charges against him were ever filed. He signed a written statement, which was consistent with that of the victims. He told the police that he had been using his wife's car for "car service" and transported a man he knew as "Speed" to Broadman Parkway. He disavowed any knowledge that the carjacking was planned, and stated he left the scene as soon as he saw the driver of the Eclipse pull a gun on Plaza. The State submitted at trial that Steed was the thin man who drove the Daewoo to Broadman Parkway.

Steed identified a photograph of co-defendant, Gilliam, as "Speed," the heavier man in the Daewoo. Steed also identified defendant from a photograph as the gunman. At trial, Steed maintained he never read the statement and merely signed it because he was told it reflected what the victims told the police, and he was assured that if he signed the statement and identified the photographs, he could go home without being charged. The van was eventually recovered, however the sets of speakers and the gun were not. No fingerprints lifted from the Daewoo matched Gilliam's fingerprints.

State v. Stokes, 2006 WL 3345284, at *1 (N.J. Super. Ct. App. Div. Nov. 20, 2006).

On November 18, 2004, after a jury trial, Petitioner was found guilty of the following: count one, first-degree armed robbery, contrary to N.J. Stat. Ann. § 2C:15-1; count two, first-degree carjacking, contrary to N.J. Stat. Ann. § 2C:15-2; count three, third-degree theft by unlawful taking, contrary to N.J. Stat. Ann. § 2C:20-3; count four, third-degree unlawful possession of a weapon, contrary to N.J. Stat. Ann. § 2C:39-5b; count five, second-degree possession of a weapon for an unlawful purpose, contrary to N.J. Stat. Ann. § 2C:39-3a and count eight, third-degree possession of CDS, contrary to N.J. Stat. Ann. § 2C:35-10a(1). Id. On June 3, 2005, the court granted the State's motion to sentence Petitioner to a mandatory extended term pursuant to N.J. Stat. Ann. §

2C:43-6c and sentenced Petitioner to thirty years' imprisonment with an 85% parole ineligibility, pursuant to the No Early Release Act, N.J. Stat. Ann. § 2C:43-7.2d(10). Id.

Petitioner filed an appeal and, on November 20, 2006, the Appellate Division upheld his conviction and sentence. Id. The Supreme Court of New Jersey denied his petition for certification on February 15, 2007. State v. Stokes, 917 A.2d 787 (N.J. 2007). Petitioner filed a petition for post-conviction relief ("PCR") and on August 11, 2008, the state court denied that PCR petition. (Resp't's Br., Ex. 28, PCR Order, Aug. 11, 2008). The Appellate Division affirmed the denial of PCR relief. State v. Stokes, 2010 WL 3075664 (N.J. Super. Ct. App. Div. August 02, 2010). On January 7, 2011, the New Jersey Supreme Court denied certification. State v. Stokes, 12 A.3d 210 (N.J. January 07, 2011). Thereafter, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry No. 1). He raises the following grounds for relief:

1. The trial court's denial of the defense motion to sever the narcotics charges deprived Petitioner of a fair trial.

2. The admission of testimony regarding alleged threats made to a key state's witness without a limiting instruction deprived Petitioner of a fair trial.

3. The trial court's accomplice liability instruction was inadequate thereby depriving Petitioner of a fair trial.

4. The prosecutor impermissibly commented on Petitioner's failure to testify at trial.

5. Trial counsel was ineffective for failing to make a motion to suppress the evidence seized from the Mitsubishi.

6. Trial counsel was ineffective for not requesting a <u>Wade</u> hearing.

7. Trial counsel was ineffective for failing to file a timely motion to sever the narcotics charges.

(<u>Id.</u>). Respondents filed an answer, arguing that Petitioner has failed to carry his burden to demonstrate entitlement to habeas relief.[2] (Docket Entry No. 9). Petitioner filed a reply. (Docket Entry No. 14).

B. **Motion to Amend the Petition**

On January 31, 2013, almost two years after he filed the initial petition and almost a year after he filed his reply, Petitioner filed the present motion, (Docket Entry No. 16), seeking to bring two additional grounds for habeas relief: (1) trial counsel was ineffective for failing to argue that Petitioner could not be sentenced to an extended term for carjacking and (2) appellate counsel was ineffective for failing to challenge Petitioner's sentence on the same ground on appeal. Respondents filed an opposition, arguing that Petitioner's claims are procedurally barred. (Docket Entry No. 18). Petitioner filed a reply. (Docket Entry No. 19).

---

[2] Respondents also raised untimeliness of the petition as an affirmative defense. Both Respondents and Petitioner make reference to a "motion to file a notice of appeal as within time," which apparently included a certification from counsel, that Petitioner filed in the Appellate Division regarding his PCR petition. (<u>See</u> Pet'r's Reply 2; Resp't's Answer 58). It appears that the motion was granted, but neither party provided this Court with the motion papers or the order. Since this Court is denying the petition on the merits, it will not require the parties to supplement the record.

6

## II. DISCUSSION – PETITION FOR HABEAS CORPUS

### A. **Legal Standard**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> . . .
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . .

28 U.S.C. § 2254.

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405–06 (2000). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." A state court decision may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply" (although the Supreme Court expressly declined to decide the latter). Id. at 407–09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

An adjudication by the state court on the merits of a claim, however summary, is entitled to § 2254(d) deference. Chadwick v. Janecka, 312 F.3d 597,

606 (3d Cir. 2002) (citing <u>Weeks v. Angelone</u>, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA-style independent judgment. <u>See</u> <u>Hameen v. State of Delaware</u>, 212 F.3d 226, 248 (3d Cir. 2000); <u>Purnell v.</u> <u>Hendricks</u>, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). In such a case, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001) (citing <u>McCandless v.</u> <u>Vaughn</u>, 172 F.3d 255, 260 (3d Cir. 1999)). "However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." <u>Appel</u>, 250 F.3d at 210.

The deference required by § 2254(d) applies without regard to whether the state court explicitly cited the relevant Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." <u>Priester v. Vaughn</u>, 382 F.3d 394, 398 (3d Cir. 2004) (citing <u>Early v. Packer</u>, 537 U.S. 3 (2002); <u>Woodford v. Visciotti</u>, 537 U.S. 19 (2002)).

## B. **Analysis**

### 1. *Severing Narcotics Charges*

In Ground One of the petition, Petitioner argues that he was denied his right to a fair trial when the trial court denied defense counsel's motion to sever the drug charges from the other charges brought against Petitioner.

Petitioner raised this argument on direct appeal and the Appellate Division

rejected it, summarizing the facts of record and holding as follows:

> Prior to jury selection, but after the jury panel had been brought into the courtroom and the indictment read to the jury panel, defendant requested that the two drug-related charges be severed, since they were not related to the first seven counts of the indictment. Defendant contends that his motion to sever was improperly denied, and the denial constitutes an abuse of the trial court's discretion.

> Defendant argues that the evidence from the drug charge would not have been admitted as other crimes evidence pursuant to N.J.R.E. 404(b) if the carjacking charge alone had been tried. The State submits that the denial of the severance motion, filed after the commencement of jury selection, was a sound exercise of the trial court's discretion and that defendant was not prejudiced, as the defense utilized the presence of drugs in defendant's car as a defense to the more serious charges.

> 'A motion for separate trial of counts of an indictment must be made pursuant to Rule 3:10-2, unless the court for good cause shown, enlarges the time.' R. 3:15-2(c). Rule 3:10-2(a) requires that at the arraignment/status conference, counsel shall advise the court of counsel's intention to file a severance motion, and at the conference the court shall set "dates for filing, briefing and for the hearing" of such motion. The court may permit a motion to be made thereafter for "good cause and in the interest of justice." Id.; R. 3:15-2(c). Failure to make such a motion constitutes waiver from which the court may grant relief. State v. Del Fino, 100 N.J. 154, 160 (1985).

In this case, the judge stated:

> Alright, obviously this issue comes very late in the game. The jury-potential jury having already been advised that there are narcotics charges pending against the defendant. It would, I think serve little purpose to sever them even if severance was appropriate based upon the reasoning in support of the application.

The judge noted that the drug charges arose out of contemporaneous events as the narcotics were alleged to be in the possession of defendant at the time of his arrest for the carjacking. Additionally, defendant's motion to sever was made after the jury panel had been read the charges and as jury selection had begun.

Also, defendant and his counsel had signed a plea cut-off form indicating that there were no remaining motions to be argued prior to trial. Had the motion been granted, the jury pool would have had to have been instructed to disregard the drug possession charges. Lastly, defense counsel failed to make the requisite good cause showing required by Rule 3:10-2(a).

Although there is preference for joinder, Rule 3:15-2(b) vests a trial court judge with discretion to grant or deny a motion to sever counts of an indictment. State v. Oliver, 133 N.J. 141, 150 (1993). Thus, the decision of the trial court can be reversed only if the appellate court finds an abuse of discretion. State v. Chenique-Puey, 145 N.J. 334, 341 (1996); State v. Mance, 300 N.J. Super. 37, 53 (App. Div. 1999). Additionally, the court's decision to deny defendant's motion is entitled to great deference on appeal. Id.

Our review of the record convinces us that defendant was not prejudiced by the denial of his motion to sever. Counsel for both defendants used the possession of drugs in the Eclipse to their advantage, attempting to discredit Plaza and Arrazo as drug buyers rather than legitimate speaker salesmen.

Further, we are satisfied that severance would not have resulted in acquittal. Defendant conceded defendant's possession of cocaine and used it in his defense against the more serious charges. The evidence of carjacking was equally sound. Defendant was arrested at the scene by officers who were in the process of issuing him a ticket for double-parking. The victims signaled to the officers that they had been carjacked at gunpoint, and identified defendant at the scene. The testimony of the victims was unequivocal as to the defendant's identity and his role in the armed carjacking. Therefore, although we are satisfied that the court's denial of the late motion did not constitute an abuse of discretion, if there were any error, it was harmless. See State v. Macon, 57 N.J. 325, 337-38 (1971).

State v. Stokes, 2006 WL 3345284, at *3-4 (N.J. Super. Ct. App. Div. Nov. 20, 2006).

The U.S. Supreme Court has observed that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a

11

defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n. 8 (1986). Denial of a motion to sever violates due process "only if there is a serious risk that a joint trial would compromise a specific right of . . . the defendant[ ], or prevent a jury from making a reliable judgement about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant . . . . [L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro v. United States, 506 U.S. 534, 539 (1993). Moreover, as the Supreme Court observed in the context of severance of defendants, "a fair trial does not include the right to exclude relevant and competent evidence." Id. at 540 (citation and internal quotation marks omitted).

Even setting aside Petitioner's apparent procedural default under state law, this discretionary denial of severance does not rise to the level of a constitutional violation. The joinder of the narcotics charges with the others allowed the state to present the full chronology of related events, and avoided the need to repeat evidence at separate trials. It did not compromise any specific trial right of Petitioner or prevent the jury from reliably judging Petitioner's guilt or innocence. As noted by the state court, Petitioner used the possession of the cocaine to his advantage in his defense against the other more serious charges. Moreover, the evidence of carjacking, which included a contemporaneous identification by the victims, was very substantial, rendering any arguable error

12

harmless.

Like the state courts I have, for purposes of argument, set aside questions of procedural default and examined the merits. Having done so, I agree that joinder of charges did not deny Petitioner a fair trial, and I find that the New Jersey courts' adjudication of this claim was not contrary to, or an unreasonable application of, <u>Lane</u> or other Supreme Court holdings. Indeed, it appears to track the manner in which the federal courts have interpreted such holdings. <u>See</u> <u>Cummings v. Sirmons</u>, 506 F.3d 1211, 1239 (10th Cir. 2007) (where "it seems inconceivable that the State could have prosecuted Cummings for Melissa's murder without being permitted to provide the jury with some evidence regarding the events leading up to Melissa's death," failure to sever was not unreasonable application of <u>Lane</u>); <u>Comer v. Schiriro</u>, 463 F.3d 934, 957–59 (9th Cir. 2006) (state death penalty trial was not rendered fundamentally unfair by joinder of homicide count with kidnapping, robbery and sexual assault charges, since some evidence was admissible as to all counts, jury instruction limited prejudice, and evidence relating to all counts was strong); <u>Herring v. Meachum</u>, 11 F.3d 374, 377–78 (2d Cir. 1993) ("where a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that actual prejudice resulted from the events as they unfolded during the joint trial").

2. *Jury Instructions*

The Petitioner challenges a trial court instruction to the jury regarding the

prior statement of a key witness to the effect that he had been threatened, and a second instruction regarding accomplice liability. Generally, a jury instruction does not merit federal habeas relief merely because it is inconsistent with state law. Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction . . ., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. . . . "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle, 502 U.S. at 72–73 (citations omitted). Most pertinently, the Due Process Clause would be violated if an erroneous instruction rendered the trial as a whole unfair or "operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (1997). See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt …"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the Constitution).

### a. Prior Statements

Petitioner argues that he was deprived of a fair trial by the admission, without adequate limiting instructions, of testimony that a key State witness,

Henry Steed, had told the police and the prosecution that he had been threatened.[3] Petitioner raised this claim on direct appeal and the Appellate Division stated the following when denying it:

> Defendant next contends that the trial court erred in admitting the testimony of Detective Casio and Assistant Prosecutor Lane that Steed received telephone calls that were threatening in nature and compounded the error by not giving a N.J.R.E. 404(b) limiting instruction.
>
> Steed gave two statements. The first was Steed's signed statement to police in the early morning hours of May 30, 2002, less than twelve hours after the carjacking. This statement was admitted as substantive evidence pursuant to N.J.R.E. 803(a)(1). The second statement, given November 10, 2004, involved threats against Steed. After conducting a N.J.R.E. 401 hearing, the court admitted the second statement. The statement was not admitted to prove that threats had, in fact, been made but as a prior inconsistent statement to show that Steed feared for his and his family's safety should he testify, as a result of having received several anonymous telephone calls.
>
> The court admitted the statement for the purpose of permitting the jury to evaluate the credibility of Steed and the veracity of his statement. There was nothing in the statement to suggest that either defendant or Gilliam made the telephone calls, nor was there any other evidence of the identity of the callers. Further, neither defendant was charged with witness tampering.

---

[3] To the extent Petitioner is challenging the admission of this testimony under state rules of evidence itself, habeas relief would necessarily be denied. The violation of a right created by state law is not cognizable as a basis for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))). Even if an error of state law underlay the evidentiary ruling, Petitioner could not obtain relief unless the ruling rose to the level of a deprivation of due process. To prevail on such a claim, a habeas petitioner must show that the error was so pervasive as to have denied him a fundamentally fair trial. Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001). Petitioner has made no such showing here.

Defendant contends that while such testimony might have possessed some probative value, any probative value was clearly outweighed by its inherently prejudicial and inflammatory nature. Defendant asserts that while the allegedly threatening telephone calls were never attributed to either defendant, the inescapable conclusion was that the calls had either actually been made by one of the defendants, or that one or both defendants had in some way been responsible for the calls being made. Defendant, therefore, contends that the statement must be evaluated pursuant to N.J.R.E. 403 and must be excluded because "its probative value is substantially outweighed by the risk of undue prejudice.

The burden to prove that N.J.R.E. 403 considerations should control is on the party seeking exclusion. Biunno, Current N.J. Rules of Evidence, comment on N.J.R.E. 403 (2006). The trial court has broad discretion in performing a Rule 403 balancing test. Ibid. "Determinations by the trial court pursuant to Rule 403 will not be overturned on appeal unless it can be shown that there was a palpable abuse of discretion, a 'finding so wide off the mark that a manifest denial of justice resulted.'" Ibid. (quoting Green v. New Jersey Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). We find no abuse of discretion here.

Defendant contends, however that a proper limiting instruction in the court's charge to the jury was necessary in order to avoid the possibility of undue prejudice to defendant. However, no charge was requested by counsel.

The court instructed the jury as to the appropriate criteria to be utilized in assessing Steed's inconsistent statements to the police as follows:

> Now as far as Mr. Steed is concerned, his testimony as I recall it and once again I caution you, it's your recollection and not mine that determines the facts. As I recall it, he indicated on the stand that the statement he signed did not contain his words but were merely the police rendition of the victim's statement to them and that he signed them only to indicate he was not involved in the robbery. He also denied stating to Assistant Prosecutor Lane that as a result of several phone calls that he received he was fearful that his testimony at trial would endanger the safety of himself and his family.

16

. . .

Now specifically as to Mr. Steed's inconsistent statements and the witness statement that's been admitted in evidence, in deciding whether that statement, if made is credible, you should consider any of the following relevant. First Henry Steed's connection to and interest in the matter reported in the prior statement.

Second, the person or persons to whom he gave the statement.

Third, the place and occasion of the giving of the statement.

Fourth, that Henry Steed was then in custody or otherwise a target of the investigation.

Fifth, the physical and mental condition of Henry Steed at the time.

Sixth, the presence or absence of other persons.

Seventh, whether Henry Steed incriminated himself or sought to exculpate himself by the statement.

Eighth, whether a writing is in a person's handwriting.

Ninth, the presence or absence and the nature of any interrogation.

Tenth, whether a writing contains all or only a portion or somewhat of what Henry Steed said.

Eleventh, the presence or absence of any motive to fabricate.

Twelfth, the presence or absence of any explicit or implicit pressure, inducement or coercion to make a mistake.

Thirteenth, whether the use to which the authorities

17

would put the statement was apparent or make known to Mr. Steed.

Fourteenth, the inherent believability or lack of believability of the statement.

Fifteenth, the presence or absence of corroborative evidence.[4]

Now I further instruct you that a witness' prior inconsistent statement under police interrogation must be carefully examined and assessed in light of all the surrounding circumstances including his interest in giving the statement at that time. . . .

Defendant does not allege that the overall instruction concerning Steed's statement was incorrect, only that Steed's second inconsistent statement as to the threats allegedly made should have been treated in a more particularized way.

We are satisfied that the court's general instruction respecting Steed's inconsistent statements was correct. Although the court did not directly address the fact that Steed never identified the caller as one of the co-defendants and that the jury should not assume the caller was one of them, we are convinced that the failure to so charge did not subject defendant to unfair prejudice and was not clearly capable of producing an unjust result. This is particularly true given the overwhelming evidence against defendant based on the victims' eyewitness identification of defendant at the scene. See Macon, supra, 57 N.J. at 337-38; R. 2:10-2.

State v. Stokes, 2006 WL 3345284, at *5-6 (N.J. Super. Ct. App. Div. Nov. 20, 2006).

Steed was a recanting witness who contradicted at trial his signed, seven-page post-arrest statement, which described the crime and inculpated the defendants. He also denied at trial that he had, in the interim, received

_____

[4] These factors were seemingly adopted from State v. Gross, 216 N.J. Super. 98, 109-110, 523 A.2d 215 (App. Div. 1987), aff'd, 121 N.J. 1, 10, 577 A.2d 806 (1990).

18

threatening phone calls aimed to intimidate him from testifying on behalf of the State. The trial court admitted two prior inconsistent statements by Steed: (a) his original, inculpatory statement, and (b) testimony of a Detective that Steed later said he had received anonymous threatening phone calls and was afraid to testify. [5] Petitioner's challenge focuses on the second statement about the threats.

At a Rule 104 hearing out of the presence of the jury, an Assistant Prosecutor, Lane, and a Detective, Casio, testified that approximately a week earlier, Steed had told them that he had received six threatening telephone calls, and that he feared for his safety and that of his family. When he described the phone calls, Steed allegedly cried. He referred to someone being on the top ten most wanted list in Essex County and he acknowledged being afraid to testify. (11/16/2004 Trial Tr. at pp. 83-133). At the time of trial, Steed denied having made such statements to Lane and Casio, and denied the substance of the statements. The trial judge ruled that Lane or Casio could testify to Steed's inconsistent earlier statements about the threatening phone calls. The judge,

---

[5] The State court's analysis to some extent seems to have lumped the two statements together, analyzing them as components of a prior inconsistent statement for purposes of N.J.R. Evid. 803(a)(1); *see also* N.J.R. Evid. 607. Evidence of Steed's statements that he had received telephone threats and was therefore afraid of testifying did not necessarily come in either as substantive evidence or as an ordinary prior inconsistent statement. It would have been admissible as impeachment of Steed's testimony or bias evidence to explain Steed's recantation of his post-arrest statement. It might also have been independently admissible over a hearsay objection as a statement of the declarant's then-existing emotional condition, pursuant to N.J.R. Evid. 803(c)(3). As noted above, however, the statement's admissibility, or not, under state evidentiary law is not relevant to whether it constitutes grounds for federal habeas relief.

19

however, limited the testimony. The witness would be permitted to state that Steed reported the phone calls; that Steed said he was in fear for himself and his family; and that Steed did not reveal the source of the calls. (11/16/2004 Trial Tr. 137). The trial judge explained that the circumstances and anonymity of the calls went to their weight, not their admissibility, and that they could be used by the prosecution to explain why Steed had backed off the inculpatory statement he had given. (Id. at 139-41). On direct examination, Steed did indeed deny that he had been threatened. (Id. at 160) In accordance with the trial court's ruling, Assistant Prosecutor Lane testified briefly that Steed reported the threatening phone calls to himself and Casio, and that Steed was fearful of testifying. (11/17/2004 Trial Tr. at 145-47).

Petitioner's objection to all of the foregoing is actually quite narrow. He objects to the trial court's 15-part instruction to the jury as to how they should carefully consider and weigh out of court statements. According to the Petitioner, this instruction should also have included an admonition that the threats be considered solely for the purpose of explaining Steed's change of story. Petitioner also objects that the calls were not specifically linked to the Petitioner.

This error, if it was an error, did not rise to the level of a due process violation requiring federal habeas relief. The purpose of the testimony – explaining Steed's recantation and undermining his denials of what he had earlier stated – was a proper one. That specific purpose would have been fairly apparent to the jury with or without an instruction from the judge. Evidence of a

witness's prior inconsistent statements is commonly admitted for impeachment purposes.[6] Evidence of a witness's bias and motive to lie, whether or not it consists of the witness's own statements, is also commonly admitted in criminal trials. See United States v. Abel, 469 U.S. 45, 49-52 (1984) (noting overwhelming precedential support for admission of extrinsic evidence of witness's bias); United States v. Green, 617 F.3d 233, 251 (3d Cir. 2010); United States v. Martinez, 962 F.2d 1161, 1165 (3d Cir. 1992). Extrinsic evidence that contradicts the material testimony of a witness as to a specific, relevant fact is also admissible, even if it would have been inadmissible to impeach a witness's general credibility. United States v. Console, 13 F.3d 641, 661-62 & n.19 (3d Cir. 1993), cert. denied, 511 U.S. 1076, 513 U.S. 812 (1994); United States v. Calle, 822 F.2d 1016, 1021 (11th Cir. 1987). Because such evidence is highly relevant to the finder of fact, it has not been held to violate the Rules of Evidence, let alone the due process clause. Whatever may be said about this evidence, its admission did not rise to the level of violating clearly established United States Supreme Court case law, which is the threshold for habeas relief.

---

[6] State practice diverges somewhat from federal practice in this regard, particularly as to the use of extrinsic evidence to impeach a party's own witness. E.g., compare Fed. R. Evid. 607 (any party may impeach witness) with N.J. R. Evid. 607 (imposing additional requirements). The differences are not pertinent to federal habeas relief.

Finally, any arguable error was certainly harmless. Lane's testimony was very brief, and it was not presented in an inflammatory manner. The lack of an evidentiary link between the anonymous phone calls and the Petitioner (or rather the trial court's failure to specifically highlight that fact in its instructions) does not tip the balance. This evidence was introduced not to accuse the Petitioner of making threatening calls but to explain that Steed had changed his testimony out of fear. Neither the judge nor the attorneys for either side ever suggested anything to the contrary. No defendant, let alone Stokes specifically, was accused of placing the threatening calls. Steed had already said in his post-arrest statement, which was before the jury, that he was afraid of "Speed" (i.e. Gilliam), not Stokes; this secondhand evidence about the telephone calls was therefore somewhat cumulative. In summation the prosecutor, while referring to Steed's having been threatened, cited only Steed's post-arrest statement; the prosecutor did not mention the threatening phone calls at all, which tends to suggest that they were not regarded as an important component of the government's case. Defense counsel touched on this telephone call evidence only briefly, to suggest ironically that it was absurd to suggest "that we had something to do with it." (11/18/2004 Trial Tr. at 35). In short, there was no evidence linking Petitioner to the phone calls; the prosecutor never said there was; and defense counsel pointed out that there wasn't. There was no constitutional error merely because the judge did not jump on this bandwagon.

The trial court's instructions, if not as complete as Petitioner would have

22

preferred, were comprehensive and careful, and the trial court ruled on this evidence only after it quite properly conducted a Rule 104 hearing outside the presence of the jury. Perhaps most importantly, there is nothing to suggest that this evidence was misused by the jury for any purpose other than the proper one of impeaching Steed's recantation of his post-arrest statement. Particularly in the context of all of the other very potent evidence against Petitioner, any error in the manner in which this evidence was admitted was necessarily harmless.

### b.  Accomplice liability

In Ground Three of his petition, Petitioner argues that the trial court failed to properly instruct the jury regarding accomplice liability. Petitioner raised this claim on direct appeal, and the Appellate Division resolved it as follows:

> Defendant next argues that the trial court's charge with respect to accomplice liability was inadequate. Specifically, defendant asserts that since count one involved a charge of first-degree robbery and the lesser-included offense of second-degree robbery the trial court erred in not instructing the jury in accordance with Model Jury Charge No. Two, which refers to a situation where a defendant is charged as an accomplice and the jury is instructed as to the lesser-included charges. Defendant argues that the jury should have been expressly informed that the parties who participated in the charged criminal offenses could be found guilty of different degrees of the offenses, depending on their own actions, their requisite states of mind, and that an accomplice could be guilty of a lesser-included offense compared to the offense to which the principal was found guilty. Defendant thus contends that the jury was not adequately instructed as to how it should apply accomplice liability principles to each defendant as it related to each offense.

> The objection was not raised below. However, because the error complained of involves the elements of the crimes charged, we must reverse unless the instruction as a whole adequately conveyed the essential elements for defendant's conviction. See State v. Bielkiewicz, 267 N.J. Super. 520, 528 (App. Div. 1993).

"This court has repeatedly held that portions of a charge alleged to be erroneous cannot be dealt with in isolation but the charge should be examined as a whole to determine its overall effect." State v. Wilbely, 63 N.J. 420, 422 (1973).

The trial court explained accomplice liability to the jury as follows:

> Now there's one thing I need to explain to you at this point and that is the law at times will make one person responsible or liable for the conduct of another person. So it's not only your own conduct that sometimes the law will hold you accountable for, but there are instances when the law will make you responsible for the conduct of another person.

> The law here in New Jersey is a person is guilty of an offense if it is committed by his own conduct or the conduct of another person for which he is legally accountable or both, okay?

> A person is legally accountable for the conduct of another person when he's an accomplice of such other person in the commission of the offense. A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of the offense, he solicits the other person to commit the offense or aids or agrees or attempts to aid such other person in planning or committing the offense, okay? Everybody understand what we mean by that?

> This provision of law means that not only is the person who actually commits the criminal act responsible for it, but one who is legally accountable as an accomplice is also responsible as if he committed the crime himself. Okay? Everybody understand that?

The trial court then gave illustrative examples of accomplice liability that demonstrated a shared purpose to commit the crime was required for conviction:

In Bielkiewicz, we determined that "a jury must be instructed that to

24

find a defendant guilty of a crime under a theory of accomplice liability, it must find that he 'shared in the intent which is the crime's basic element and at least indirectly participated in the commission of the criminal act.'" <u>Bielkiewicz</u>, <u>supra</u>, 267 N.J. Super. at 528 (quoting <u>State v. Fair</u>, 45 N.J. 75, 95 (1965)). In this case, the jury was instructed on robbery and then on carjacking. The judge gave one instruction on complicity. The instruction said guilt was established if the defendant "agreed to assist [codefendant] in the commission of an offense with a full knowledge and a shared purpose." The judge also instructed that liability required proof that to be an accomplice defendant had "to have the same purpose, a shared purpose and you must agree to either commit or assist or help [codefendant] in committing the crime."

While portions of this instruction read in isolation suggest that knowledge of the crime that the codefendant would commit is enough, we are convinced that the instruction read as a whole could not have misled the jury. The elements of each crime were stated and the judge told the jurors that the State was required to prove a shared purpose to commit the crime. We are satisfied that the court's accomplice liability charge adequately communicated that each defendant was guilty only of the crimes in which they had a shared purpose or intent. Additionally, we are satisfied that the examples the judge gave in connection with his accomplice liability instruction made the necessary elements clear, despite the fact that he never used the model jury instruction language, "the State must prove it was defendant's conscious object that the specific conduct charged be committed." Model Jury Charge (Criminal), § 2C:2-6.

We are satisfied that the charge as a whole properly instructed the jury on the concept of accomplice liability and, therefore, there was no error in the court's charge.

<u>State v. Stokes</u>, 2006 WL 3345284, at *6-8 (N.J. Super. Ct. App. Div. Nov. 20, 2006).

    In <u>Waddington v. Sarausad</u>, the Supreme Court rejected a habeas petitioner's claim that an accomplice liability instruction violated due process. 555 U.S. 179 (2009). In doing so, the Court summarized the law regarding standards governing federal court review of the constitutionality of state court

jury instructions:

> Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation. Rather, the defendant must show both
>
> **[1]** that the instruction was ambiguous and
>
> **[2]** that there was " 'a reasonable likelihood' " that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. . . .
>
> In making this determination, the jury instruction "may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." <u>Estelle</u>, <u>supra</u>, at 72. Because it is not enough that there is some "slight possibility" that the jury misapplied the instruction, <u>Weeks v. Angelone</u>, 528 U.S. 225, 236 . . . (2000), the pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,'" <u>Estelle</u>, <u>supra</u>, at 72, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (quoting <u>Cupp</u>, <u>supra</u>, at 147, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368).

<u>Id.</u> at 190-91 (bracketed numbers and line breaks added; citations and internal quotation marks omitted); <u>Williams v. Beard</u>, 637 F.3d 195, 223 (3d Cir. 2011) (citing the two-step test from <u>Waddington</u>, <u>supra</u>, and noting that the due process analysis "depends as much on the language of the court's charge as it does on the particularities of a given case").

Here, Petitioner does not show that there was a reasonable likelihood that the jury applied the instructions in a way that relieved the state of its burden of proving the elements of accomplice liability. Indeed, I agree with the State appellate court that the instructions, taken as a whole, adequately conveyed to the jury that the offense had a lesser-included second degree offense and that, to be found guilty as an accomplice, Petitioner had to share in the principal's

intent. The phrase "shared purpose" was repeated more than once. Taken as a whole, the instructions adequately conveyed to the jury the law that they were to apply. The instruction does not make it past the first prong of <u>Waddington</u>, as it did not even constitute reversible error. *A fortiori,* Petitioner's objection to the particular phrasing, as opposed to the overall thrust, of the instructions does not set forth a fundamental due process defect that would give rise to habeas relief. Nor does he point to any Supreme Court holding that would be violated by the failure to deliver the particular Model Jury Instruction that he would prefer.

Petitioner has not shown that the state courts' adjudication of his claims challenging the lack of limiting instruction regarding the threatening phone calls and the instructions as to accomplice liability were contrary to, or an unreasonable application of, Supreme Court precedent. He is not entitled to habeas relief on these grounds.

3. *Prosecutor's Comments*

In his fourth ground for relief, Petitioner argues that the prosecutor, in her closing argument, posed questions to the jury and then answered them "in a fashion which supported the State's theory of the case," a rhetorical strategy that allegedly highlighted Petitioner's decision not to testify. Petitioner raised this argument on direct appeal.

> Defendant also argues that the State's summation included improper remarks, which implicated his Fifth Amendment right not to testify. The State asserts that the remarks were drawn on permissible inferences from the facts adduced at trial. We are satisfied from our thorough review of the prosecutor's summation that defendant's argument is without merit and does not warrant

discussion in a written opinion. *R.* 2:11-3(e)(2).

State v. Stokes, 2006 WL 3345284, at * 8 (N.J. Super. Ct. App. Div. Nov. 20, 2006).

When reviewing a prosecutor's comments in an opening or closing statement, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). Even on direct appeal, a comment on defendant's silence will not be presumed; the court will not lightly infer that the jury drew the most damaging possible meaning from the prosecutor's remarks. *See* Donnelly, 416 U.S. at 647. In addition, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

The Petitioner objects to two sets of statements. First, noting that after the Petitioner left the scene, turned at the nearest corner and only thereafter stopped in response to police pursuit, the prosecutor asked, rhetorically: "Maybe you're saying to yourself why does Christopher Stokes stop? What's he doing there?" (R. at 64:9-11, Nov. 18, 2004). Answering her own question, the prosecutor suggested that Stokes was buying time to permit his codefendant in the van containing the speakers to get away. Second, arguing that Petitioner and Gilliam

28

had consulted in advance and were working together, the prosecutor asked "How does Stokes know" to say to Plaza and Arazzo that they were selling stolen speakers? (R. at 71:19, Nov. 18, 2004). As before, the prosecutor answered her own question, suggesting that Petitioner's knowledge and conduct could be explained only if he had spoken to Gilliam beforehand and planned the crime with him.

Petitioner believes that these portions of the summation "inferentially comment[ed] upon the Petitioner's Fifth Amendment privilege [to not testify at trial]. . . . The only way in which the prosecutor's questions could have been answered in a fashion which supported the defense theory of the case would have been had the defendant himself testified." (Pet. for Writ of Habeas Corpus at 13-14 [Docket Entry No. 1]).

This Court finds that the prosecutor's statements during her closing arguments did not have the capacity to so infect the trial with unfairness as to make the resulting conviction a denial of due process. These comments, fairly read, do not directly or indirectly refer to Petitioner's silence or his decision not to testify. Nor did the prosecutor directly or inferentially direct her questions to Petitioner or call upon him to answer them. Rather, the prosecutor simply employed a rhetorical device, posing questions that the jurors should be asking themselves and suggesting how the evidence answered those questions and pointed to Petitioner's guilt. The lack of a contemporaneous objection by counsel tends to confirm that the participants in the trial did not interpret the

prosecutor's questions in the manner now suggested by Petitioner.

To be sure, Petitioner was in an unenviable position, and as the evidence mounted he may have felt some pressure to speak on his own behalf. The Fifth Amendment privilege, however, protects against *self*-incrimination, not against incrimination simpliciter. The trial judge delivered the usual instruction that the jury could not draw an adverse inference from the defendant's silence. (11/18/2004 Trial Tr. at 82:7-13). Juries are presumed to follow instructions, a presumption that can be overcome only by a showing of an "overwhelming probability" that they were unable to do so. Richardson v. Marsh, 481 U.S. 200, 208 (1987). Nothing about these fairly innocuous questions by the prosecutor would have overborne a jury's inclination or ability to follow the judge's instructions. Finally, in the context of the strong evidence at trial, any error would have been harmless.

Therefore, the Court finds no error of constitutional dimension with respect to Petitioner's claim of prosecutorial misconduct. The state court rulings were not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor were they based on an unreasonable determination of the facts presented in the state court proceedings. Accordingly, this ground for habeas relief is denied.

### 4. *Ineffective Assistance of Counsel*

In his fifth, sixth and seventh grounds for relief, Petitioner alleges that his trial counsel was so ineffective as to violate his Sixth Amendment rights.

Specifically, Petitioner argues that counsel was ineffective for failing to make a motion to suppress the evidence found in the Mitsubishi; for failing to request a Wade hearing to challenge out-of-court identifications; and for failing to file a timely motion to sever the narcotics charges.

Petitioner raised these claims in his PCR petition in state court. The Appellate Division affirmed the trial court's denial of the petition, stating:

> Before considering the individual allegations, we briefly summarize the substantial evidence of defendant's guilt produced at trial to provide context for defendant's arguments raised in his petition.

> On May 29, 2002, on behalf of their employer, Frederick Plaza and Charles Arazzo were in a van attempting to sell home theater speakers to the general public. William Gilliam, a passenger in a silver Daewoo driven by Henry Steed, agreed to buy a pair of speakers and requested Plaza and Arazzo follow him to another location to obtain the money.

> Plaza and Arazzo followed the Daewoo to a residential neighborhood in Jersey City and parked the van directly behind the Daewoo on the right side of the street. Gilliam was talking on his cell phone outside the Daewoo when a man with dreadlocks, later identified as defendant, approached and appeared to ask Gilliam for directions. After defendant walked away, Gilliam went to the passenger side of the van, put his hands on Arazzo's neck, and ordered him out of the vehicle. Defendant pulled up next to the van driving a blue Mitsubishi Eclipse and parked it in the middle of the street. He exited the car and put a gun to Plaza's head, ordering him out of the van. Gilliam took about $100 and a cell phone from Arazzo's pocket. Steed drove off after seeing the gun.

> While on patrol, Officers King and Tedesco of the Jersey City Police Department happened on the scene. Observing the Eclipse parked in the middle of the street, they stopped to issue a ticket. As they were writing the ticket, defendant got into the Eclipse and drove off following Gilliam, who had driven away in the van. King gave chase in his cruiser and stopped defendant a short distance away.

> As the officers approached the Eclipse, Plaza and Arazzo ran up to

31

them saying, "he had a gun, he robbed us." King drew his service weapon and ordered the defendant out of the car. Plaza and Arazzo identified defendant as the armed assailant. Defendant was arrested, and the police confiscated $175 found in his pocket. The police searched the Eclipse for the weapon, discovering instead five vials of cocaine in the center console.

Plaza and Arazzo identified defendant a second time as he sat alone in a holding cell and a third time at trial.

In a signed written statement, Steed identified defendant as the gunman and Gilliam as the other man involved in the carjacking. Steed repudiated his statement at trial; however, the prosecution read the statement to the jury as a prior inconsistent statement.

In this matter, defendant's substantive challenge is limited to allegations that trial counsel (1) failed to timely file a motion to sever the CDS count, (2) failed to file pre-trial motions to suppress the drugs and money found in the vehicle upon defendant's arrest; and (3) failed to request a <u>Wade</u> hearing to challenge the out of court identifications. We conclude these arguments are unpersuasive.

On direct appeal, we considered and rejected defendant's argument regarding the severing of those counts of the indictment regarding drug possession and distribution. Further review is barred. <u>See</u> <u>State v. McQuiad</u>, 147 *N.J.* 464, 483, 688 A.2d 584 (1997) (stating a prior adjudication upon the merits of any ground for relief is conclusive); <u>see</u> <u>also</u> Rule 3:22-5 (same).

Defendant contends that had counsel moved to suppress the evidence found in the automobile search incident to his arrest such motion would have been granted because police lacked "exigent circumstances," as mandated in <u>State v. Peña-Flores</u>, 198 N.J. 6, 28, 965 A.2d 114 (2009). However, <u>Peña-Flores</u> was decided long after defendant's trial. To be effective, counsel is not charged with being prescient.

At the time of defendant's trial, the law allowed a warrantless search of a motor vehicle incident to arrest to ensure police safety or to avoid the destruction of evidence. <u>Chimel v. California</u>, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969); <u>see</u> <u>State v. Welsh</u>, 84 N.J. 346, 355, 419 A.2d 1123 (1980) (affirming "[t]he relevant facts, then, appear to be those which disclose what places the person under arrest presently could reach at the time the

arrest is undertaken and how likely it is that he would attempt resistance or escape or destruction of evidence"); State v. Pierce, 136 N.J. 184, 211, 642 A.2d 947 (1994) (affirming the "the rationale of Chimel," but rejecting an automatic application "to authorize vehicular searches following all arrests for motor-vehicle offenses").

Here, defendant was arrested after attempting to flee detention in connection with a carjacking and robbery. An automobile chase ensued. More important, defendant was alleged to be armed.

In accordance with the precedents then in effect, and under the circumstances of this case, the search for the weapon incident to arrest was valid. Had counsel made a pre-trial motion to suppress alleging an illegal warrantless search, it would not have been successful in excluding the seized evidence. Defendant cannot sustain his burden to satisfy the second prong of the Strickland/Fritz test.

Turning to the out-of-court identifications, as noted by the PCR judge, "the first identification of [ ] defendant took place at the scene, within moments of the commission of the offense, and did not involve any police conduct." There was nothing suggestive about this identification as it resulted not from any police procedure but from the victims' positive spontaneous and voluntary statements. As correctly determined by the trial judge, "there was little to no likelihood of misidentification under these circumstances." Similarly, the second one-on-one identification, made by the same victims while defendant was in a holding cell, was not shown to be unreliable based upon its proximity to the event and the victims' prior spontaneous identification.

Consequently, the absence of impermissible suggestibility or the likelihood of misidentification obviated the need for a Wade hearing. State v. Ortiz, 203 N.J.Super. 518, 522, 497 A.2d 552 (App. Div.), certif. denied, 102 N.J. 335, 508 A.2d 212 (1985). Defendant fails to satisfy the first prong of the Strickland/Fritz test, as counsel's decision not to challenge the victims' identifications was not improper.

Accordingly, as defendant failed to establish a prima facie showing of ineffective assistance of counsel, he was properly denied an evidentiary hearing. Preciose, supra, 129 N.J. at 462, 609 A.2d 1280; Cummings, supra, 321 N.J. Super. at 170, 728 A.2d 307.

State v. Stokes, 2010 WL 3075664, at * 2 (N.J. Super. Ct. App. Div. Aug. 2, 2010).

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (citing Strickland, 466 U.S. at 690). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" Id. (citing Strickland, 466 U.S. at 688).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified

errors were so serious that they were outside the wide range of professionally competent assistance. Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 131 S. Ct. 770, 787-88 (2011) (citing Strickland, 466 U.S. at 687). As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

which we expect will often be so, that course should be followed." Id.

The Appellate Division held that Petitioner's arguments regarding the evidence seized from the car, the severing of the narcotics charges, and the witness identification lacked merit. Substantially for the reasons stated in the Appellate Division opinion, I agree. Counsel did not act unreasonably in failing to raise these arguments before the state court; they would not have succeeded. Further, Petitioner has not shown any prejudice that resulted from the alleged failures of trial counsel. As the state courts repeatedly pointed out, there was ample evidence to support Petitioner's conviction, including the observations of the police officers and two identifications by the victims, one of which took place at the scene of the crime. Counsel's errors, if errors they were, are unlikely to have affected the result.

The state courts' decisions on the ineffective assistance of counsel issues were not contrary to, and did not involve an unreasonable application of, clearly established federal law. Nor were they based on an unreasonable determination of the facts presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on these claims.

### III.    MOTION TO AMEND THE PETITION

Petitioner's motion seeks to add the following grounds to his petition: (1) his trial counsel was ineffective for failing to argue that Petitioner could not be sentenced to an extended term for carjacking and (2) his appellate counsel was ineffective for failing to challenge Petitioner's sentence on the same ground on

appeal.

Respondents oppose the motion, arguing that these issues were not raised or exhausted in any state court proceeding and are procedurally barred from being raised here. Petitioner's reply argues that these challenges were made possible only by the United States Supreme Court's holding in <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012), and that his failure to raise them earlier should therefore be excused.

In this case, Petitioner was advised on June 28, 2011 of his rights under <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000), and notified that under the AEDPA, he was required to file one, all-inclusive petition for a writ of habeas corpus. (Docket Entry No. 2.) Because the AEDPA bars second or successive petitions, Petitioner was informed that this all-inclusive § 2254 petition must be filed within one year of the date his conviction became final. The <u>Mason</u> Order cited the relevant federal statutes and asked Petitioner if he wanted this Court to rule on the Petition "as is" or if he wanted to withdraw the pending petition in order to add additional claims, subject to the one-year statute of limitations. It informed him that if he did not respond, his petition would be ruled on "as is." Petitioner did not respond.

Petitioner waited to raise these two additional ineffective assistance claims until January 31, 2013, nearly two years after he filed his original petition. It is clear that he was aware of the facts forming the basis of the claims at the time his conviction became final and at the time he filed his Petition – *i.e.,* he necessarily

knew that his trial and appellate counsel had not challenged the extended term for carjacking.

Claims presented in a § 2254 petition must be exhausted first in state court. See 28 U.S.C. §§ 2254(b) and (c); Ex Parte Hawk, 321 U.S. 114, 117 (1944). It is uncontested that these claims were not exhausted. Petitioner seems to be arguing that he did not litigate these claims before because they would have been barred as procedurally defaulted. Based on the holding of the Supreme Court in Martinez, however, Petitioner argues that he has now has a "cause and prejudice" basis to overcome that procedural bar.[7] He therefore filed this motion to amend the Petition some ten months after Martinez was decided. Petitioner did not attempt to raise these claims in State court.

In the end, however, it does not matter. Even if the Court were to permit the amendment, it would necessarily deny these claims. Counsel was not ineffective. As the Appellate Division held, there was no merit to the sentencing issue that Petitioner faults counsel for failing to raise. Specifically, on direct appeal, the Appellate Division held that:

> We are convinced that the judge correctly applied Dillihay when he concluded that the mandatory extended term for robbery survived merger. See also State v. Wade, 169 N.J. 302 (2001); State v. Baumann, 340 N.J. Super. 553 (App. Div. 2001); Cannel, New Jersey Criminal Code Annotated, comment 9 on N.J.S.A. 2C:1-8 (2005) ("occasionally one aspect of a sentence for one of the offenses being merged will be more severe than that for the other offense and a second aspect will be less severe. In such a case, the more severe

---

[7] In Martinez, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S. Ct. at 1315.

aspects of each sentence should survive merger").

State v. Stokes, 2006 WL 3345284, at *11 (N.J. Super. Ct. App. Div. November 20, 2006). Thus the court explicitly and authoritatively held as a matter of state law that (1) the armed robbery and carjacking convictions should be merged and, (2) based on the armed robbery conviction, the extended term under the Graves Act was proper. Accordingly, had Petitioner's counsel made this argument, it would have been unsuccessful. Accordingly, Petitioner cannot demonstrate either deficient performance or prejudice as a result of counsel's failure to raise the issue.

Therefore, at this late point in the litigation of this habeas petition, and for the reasons set forth above, the motion to amend, and in the alternative the amended claims themselves, will be denied.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. I will not issue a certificate of appealability.

## V.    CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.[8] An appropriate Order follows.

Dated: May 3, 2013

KEVIN MCNULTY
United States District Judge

---

[8] In Petitioner's Reply, he appears to challenge the state court's decision not to grant him a evidentiary hearing on his PCR petition. (Pet'r's Reply 31-23, Docket Entry No. 14). The denial of an evidentiary hearing in a state court PCR proceeding does not give rise to a constitutional question in a federal habeas action. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation"). To the extent Petitioner intended that his argument be construed as a motion for this Court to hold an evidentiary hearing, the motion is denied as moot.